UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 06-101-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MONTY HART, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of *pro se* Defendant Monty Hart's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). [Record No. 283] However, under the facts presented, a reduction in Hart's sentence is not warranted.

On February 1, 2007, Hart was arrested pursuant to criminal charges that he had conspired to possess with intent to distribute approximately 150 pounds of marijuana. A criminal Complaint was filed on February 2, 2007, in Docket number 6:07-MJ-06013-REW. Hart was released on bond to cooperate with the United States and the Drug Enforcement Administration. It was discovered that Hart was double-crossing the United States and that he was no longer in a position to cooperate. However, an indictment was never issued regarding that criminal activity. [Record No. 228, pp. 10–11]

On March 1, 2007, a twenty-two (22) count superseding Indictment was returned by the grand jury. [Record No. 75] Pursuant to the superseding Indictment, Hart was charged with conspiracy to distribute 1,000 kilograms or more of marijuana under 21 U.S.C. §§ 846,

841(b)(1)(B), and 851. The United States also sought forfeiture of certain assets under 21 U.S.C. 853. Hart eventually entered a guilty plea to the conspiracy count and the forfeiture charge was dismissed. [Record Nos. 124, 173] Hart's Plea Agreement outlined his criminal conduct. Paragraph 3 of that agreement provides, in part:

> (a) Beginning at a time after January 1, 2003, the exact date unknown, Jimmy Earl Elliott, aka Jimmy Elliott Sr. and Jimmy Elliott Jr. began obtaining quantities of marijuana from sources of supply in Chicago, Illinois. Jimmy Elliott, Sr. and Jimmy Elliott Jr., made the arrangements for price and quantity with the different sources of supply. The quantities were obtained by vehicle and transported from Chicago, Illinois to various locations including Elliott Garage located in Woodbine, Whitley County, Kentucky in the Eastern District of Kentucky. These load drivers include, but are not limited to Donnie Burke.
>
> (b) Sometime in early 2004, Monty Hart began obtaining quantities of marijuana from the Elliott organization. Monty Hart would make purchases of marijuana from the Elliotts at the garage on the Elliott property. These individual transactions did not exceed 20 pounds at a time. The total amount of marijuana received from the Elliotts at this time was approximately 1,000 pounds.
>
> (c) In mid 2005, a source of supply was developed in Tampa, Florida by Monty Hart. The source of supply in Chicago was no longer a viable source. At this time, Jimmy Elliott, Sr. withdrew from the conspiracy and did not participate in obtaining marijuana from Florida. This initial source of supply in Florida was also a source of supply of marijuana for the Jeff Hill organization. Monty Hart and Jimmy Elliott, Jr. were the initial points of contact for the Florida source of supply. Later, Jeff Hill splintered off and went with a separate source of supply after a disagreement with Monty Hart over money. Donnie Burke and Monty Hart were the load drivers on many of the trips where marijuana was transported from Florida to Woodbine, Kentucky. Monty Hart and Jimmy Elliott, Jr. would split the loads of marijuana they received from Florida. The loads were approximately 70-80 pounds of marijuana per load. The trips were not frequent, but averaged one trip every 3 to 4 weeks. The total amount received by Jimmy Elliott, Jr., and Monty Hart, as driven by Donnie Burke, was approximately 300-400 pounds.
>
> (d) Prior to the execution of search warrants at the Elliott Garage, Monty Hart broke off his relationship with the Elliott organization. At this point Monty Hart was responsible for approximately 500-600 pounds of marijuana due to

> his agreement with Jeff Hill. The total amount of marijuana foreseeable to Monty Hart (based on his participation with the Hill and Elliott organizations) is approximately 2,000 but no more than 2,100 pounds of marijuana.

[Record No. 124]

On September 24, 2007, Hart was sentenced to a term of incarceration of 150 months, to be followed by a term of supervised release of eight years. [Record No. 178, pp. 2–3] Hart objected to the drug quantity[1] and the leadership role assigned by the probation officer in his Presentence Investigation Report. After considering the evidence presented regarding these issues, the Court determined that the Base Offense Level of 32 under the United States Sentencing Guidelines should be applied in calculating an appropriate guideline range applicable to Hart's conduct. [Record No. 173] The Government requested a three-level reduction in the guideline range for acceptance of responsibility under U.S.S.G. § 3E1.1. However, the Court found that Hart qualified for a four-level increase for his leadership role in the conspiracy pursuant to U.S.S.G. § 3B1.1(a). As a result, the Court calculated Hart's Total Offense Level as 33 and his non-binding guideline range for incarceration to be 135 to 168 months. [Record No. 173]

Hart argues that his sentence should be reduced based on the United States Sentencing Commission's reduction to the drug tables contained in the United States Sentencing Guidelines. The reduction became effective November 1, 2014. Thus, the question presented by the current motion is whether a sentence reduction would be warranted in light of the facts of the case and all relevant factors to be considered under 18 U.S.C. §

---

1   Specifically, Hart objected to the 150 pounds of marijuana he had been arrested for on February 1, 2007, being included in the quantity calculation of the Presentence Investigation Report. [Record No. 228, pp. 5–10]

3553. After again considering all relevant statutory factors, the undersigned believes that such a reduction is not warranted.

In evaluating the present motion, this Court must consider all relevant statutory factors and independently determine whether a reduced sentence would be "sufficient, but not greater than necessary, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." These factors include the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from future crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner;

18 U.S.C. § 3553(a)(2).

After considering all relevant information, these statutory goals would not be met by a reduction in Hart's sentence. Hart pled guilty to conspiracy to distribute a *substantial* amount of marijuana. The Plea Agreement stated that the amount of marijuana foreseeable to Hart was approximately 2,000 pounds. Hart had a leadership role in a conspiracy which included transporting drugs from Chicago, Illinois and Tampa, Florida, to be sold in Eastern Kentucky. As stressed at his sentencing hearing, these types of conspiracies result in untold damage to the communities where they take place. And Hart provided the necessary link to large sources of marijuana. [Record No. 228, pp. 31–33]

Although Hart was found to have a Criminal History Category of I, he was previously convicted of a felony drug trafficking offense and was originally arrested in February of

2007 on suspicion of drug trafficking.  No 5K motion was made by the United States because Hart had attempted early-on in the investigation to double-cross federal agents while he was not in custody.  [*Id.*, p. 35]  Even so, he was given a sentence of 150 months.  The Court concludes that a reduction of Hart's sentence would not provide a just punishment.  And more importantly, it would not provide general or specific deterrence to Hart or others inclined to commit a similar offense.  Further, it would not provide sufficient protection of the public from future crimes of the defendant.

Finally, the Court notes that the United States Sentencing Guidelines are not binding. While the costs to incarcerate Hart are substantial, those costs are not factors to consider under 18 U.S.C. § 3553 and they do not overcome the relevant considerations outlined above.  Accordingly, it is hereby

**ORDERED** that Defendant Monty Hart's motion for a reduction of his sentence [Record No. 283] is **DENIED**.

This 7th day of November, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge